Before we begin our proceedings for today, we have a motion for the admission to the Bar. Judge Moore? I have my law clerk, Max Bishop, who I move the admission of Maximilian Bishop, who is a member of the Bar in good standing of the highest courts of California and the District of Columbia. I have knowledge of her credentials and I'm satisfied she possesses the necessary qualifications. That's what I have to read. Now what I'd like to say is Max has been a spectacular clerk. I'm going to miss her tremendously when she leaves. I'll be very sad. It's been my great pleasure to work with her and she's done a fabulous job throughout her entire clerkship. She'll be leaving me in early December. I'd like to move for her admission. I think that she'll do a very thorough, thoughtful, and great job as an advocate, hopefully before this court soon. Very well. Your motion is granted and the applicant shall be admitted. Now if you will then address the clerk, the clerk will administer the oath of office. Please raise your right hand. Do you solemnly swear or affirm that you will support yourself as an attorney and counselor of this court, honorably and according to law, that you will support the Constitution of the United States of America? I do. Our first case today will be number 2010-3061, Carro against the Merit Systems Protection Board. Mr. Eden. Thank you, Judge Brice. Good afternoon, Your Honors, and may it please the Court. Your Honor, I have two questions that I think remain before the Court today. The first is whether the surrender of Mr. Carro's Title V rights was involuntary, and the second is, if so, does that matter for the determination of the Board's jurisdiction? The answer to both of those questions is yes, and if you'll indulge me for just a moment, I will explain why. First, on the voluntariness issue, Your Honors, under this Court's voluntariness jurisprudence, which the ALJ did not apply, I think the voluntariness question should be an easy one. It's not undisputed that the only term of Mr. Carro's appointment at the DBA that had any effect on his loss of his Title V rights was that there were a number of other cases that were not. And I think that's a good question. I think that the only term And I think that the any effect on his Title V rights was that there were no frauds. But this is critical to the Board's jurisdiction it seems to me because we have to find that he was fired because he was told misinformation that got him to quit. And the place he quit was the Department of Defense, not the DBA. I think, Your Honor, that what you have to find Now there's no question that he was fired by DBA. Okay, not by the Army, but by DBA. So I agree. There's a time gap in this case that doesn't exist in the retirement cases. Here the argument is, look, it was DBA that misled him into surrendering his rights and subsequently DBA that terminated him without process. I think the lesson that we draw from Covington-Sharp and that line of cases is in fact this, that if an agency induces a statutory employee to surrender his rights, that surrender is not effective vis-à-vis the agency that induced it. I think that's an equally valid lesson to draw from those cases. But I think Judge Bryson is suggesting that would put him back in the old job rather than to keep him in the new one. Your Honor, again, I agree that in the case of a Let me put it to you this way. The way the Board has handled this situation, at least in the same agency context, which in the non-retirement context the Board has said, in a similar context to this, all facts being identical except that you're within one agency instead of two, they have said that, well, the proper way to deal with this in that context is in fact to simply say that whatever portion of the employment that the employee didn't accept isn't effective against him. So he retains his employee status in the new position even though he is not technically a statutory employee in that position. That's the Exum line of cases. That is the Exum line of cases. That's correct. That has always struck me as being at least open to question. I'm sorry. It struck me as being at least open to question as to whether that is, strictly speaking, a correct application of the Board's jurisdictional restrictions. I mean, you can say, well, it's a matter of remedy. It's just moving the remedy within the same agency. But here, you could argue he's suing the wrong agency. I don't think so, Your Honor, for two reasons. Let me ask you a question. Well, go ahead. I don't know what you want to say. In fact, in an unpublished case that I think hasn't been cited in these proceedings, on relatively similar facts, an employee sought a remedy against the original agency, and this Court said, well, no, the agency that you're seeking reinstatement by didn't mislead you. So you're out of court. So I think this Court has essentially said that you can't get relief that way. So I think the question is, is there, in fact, a way to get relief when you have a Title V employee who has, at least we'll assume for present purposes, not surrendered his rights voluntarily? Is he simply in a black hole of Board jurisdiction, or is there a way to get him there? And I think if you read Covington and Scharf and Uni and cases like that, the way that we are reading them, you come to the conclusion that those cases essentially say, look, it's a bit of a fiction, okay, that a resignation is a removal. It isn't. We say it's a constructive removal because it's really not the same thing. Board jurisdiction only has jurisdiction over removals, but we put resignations and retirements in that box for a very good reason, which is that if we didn't, we wouldn't be able to give full effect to the Congress and to the scope of jurisdiction that Congress afforded the Board because it would make it way too easy to end money, right? It would make it way too easy for agencies to mislead people into giving up their rights, whether between agencies or across agencies. And I don't really think that given the substantial protections that Congress gave employees in Title V, it's reasonable to interpret the statute to assume that Agency A can deceive Employee B into surrendering his rights and leave him completely without a remedy. Maybe the theory is wrong. Maybe what the theory ought to be instead of that it was a constructive removal from the old job, that because they failed to notify him about the 13-month limit on his term, that the new agency can't enforce that limit against him and has to treat him as though he were hired without regard to that 13-month limit. I think that gets me to the same place, Your Honor. I think it does. It's a more coherent theory. I'm supported. I'm supported by cases. That runs into this you can't stop the government theory. In other words, I can offer my law clerks as an inducement to come work for me $300,000 a year. They don't get it. Sure. I understand that. In fact, this is a good way to frame up the issue, I think. One way you can look at this case is that this case doesn't fall squarely within either the estoppel cases or the retirement cases, the voluntariness cases. The question is, in a way, which of those lines does it fit better in? We do have lines of cases, Ward being an example, where there's a statutory or regulatory notice requirement, and if the proper notice isn't given, that can't limit the employee, and somehow or other those cases have gotten around the estoppel notion. The problem is here we don't have a specific regulatory or statutory requirement notice. True. But again, I think you can get there simply by pointing out that they've given him a tremendous amount of information. This Court has said on a number of occasions employees are entitled to rely reasonably on the representations of employee officers at agencies. So given that, given all that they told him, given that they didn't tell him the single most important thing for purposes of his quite substantial right that he held until he took this job, I think that gives rise to the duty that you're looking for. Okay. We'll reserve, we've asked you a lot of questions, we'll reserve the remainder, in fact, all of your rebuttal time, and we'll hear from the two representatives for the government. Very well. Good morning. Good afternoon, I should say. Good afternoon. Yes. The basic issue here is the scope of... Now, I'm sorry, you're representing the Board, am I correct? Yes. Okay, just to make sure we've got the players right. The basic issue here is we're dealing with Chapter 75 of Title V, which is what confers the property interest on the employee and what creates the appeal right to the Board, and the constructive removal cases on which the petitioner relies are also interpretations of that statute, applications of it, and I think it's really the involuntary resignation or involuntary retirement really is very close to a removal. I don't think it's simply a removal obtained in a different way than through formal procedures. I don't think that he's right that there's such a gap between them. At any rate, but on the other hand, what the petitioner is asking for is an extension of that statute and these applications of it, which clearly on its face deals only with an employing agency and its own employees, to a situation where involving applicants for employment who are not employed by the agency at issue, who happen to have a career status at another agency. The VA suggests that even the Ex-Im case was decided wrongly, right? That's true. I assume the Board doesn't agree with that. Of course we agree with the Ex-Im case. I think you can distinguish the Ex-Im situation from this situation because in that case, the agency where the property right is is the same agency that misled the employee. The agency knows that the employee has tenure and has rights against it, and when that agency, through misleading information, leads the employee to take a position without appeal rights and then removes him, that's not so far removed from the coerced resignation. Not so far removed is a kind of awkward phrase to use in a jurisdictional context where close enough is usually not close enough. The rationale of the involuntary retirement or involuntary resignation cases really wouldn't seem to apply that comfortably to even the Ex-Im setting. Because what you're doing is you're saying you were in effect fired from your job, let's say, as a GS-2 because we told you you would be getting a job as a GS-6, and that was wrong, and therefore what you get is not your GS-2 job back, you get the GS-6 job. That seems to me to go well beyond the scope of what the involuntary retirement resignation cases would say. At least you argue. It's a matter of remedy, though, because the agency is responsible to respect this employee's rights and they have, in the hypothesis, denied the employee's rights. And the initial Ex-Im case actually did place the employee back in the original position when they reversed the action based on the misleading information. There it was a little different because the two positions were really the same, one full-time, one part-time. The subsequent development that has made the appeal right really seeking reinstatement in the new position is presumably because that's what the employee sought. And perhaps one of the rationales for that is that a considerable amount of time may have gone past and it may have been impractical to restore the employee to the original position. I understand your point that we're talking about jurisdiction and so how can these kinds of considerations be taken into account. But I think that's what the Board was thinking. In the case of the... In Ex-Im, where does the duty come from to notify the employee? The duty would come from the agency's knowledge of this information and that the employee has rights that the agency's action will take away from them. I think, in fact, perhaps if it were simply an involuntary transfer from a tenured position to a non-tenured position, the Board might also treat that as a constructive removal as well, but we don't have that case. But it still doesn't answer the question of there's no statute, there's no regulation. What's the source of the duty? Just because the MSPB said there's a duty? Well, it's derived by the Board from the relationship with the parties, I think, yes. But it doesn't extend per part to a different agency, even if that agency is fully cognizant of the importance of the right. Because the other agency has no established relationship with this employee, has no rights against that agency, and as you pointed out, there is the awkwardness that the tenure is in one place and the misinformation is not coming from the agency against whom he has property. It's coming from this other agency. So it just doesn't work to extend it in this way. Basically because Congress has given the Board authority over relationships between an agency and its employees, the adverse actions are specified in the statute along with the standard that must be met and the employees that are covered. The Board has no authority over hiring and appointment decisions, no general authority to review them whether they are appropriate or fair or serve the efficiency of the service. So that's what they're asking for is an extension of the Board's jurisdiction into an area that it has no jurisdictions under Chapter 75. So even if you question EXIM, EXIM at least is limited to the agency and its employees. This is a considerable extension. So you view EXIM essentially, as I think you said earlier, as a remedy case. It's a case in which the Board having jurisdiction over the agency is decided to devise a remedy which is perhaps... It's almost like a prophylactic measure. The agency might try to accomplish the improper action through this step process and so this will prevent it. There aren't that many cases, I don't believe, but there are a number, I guess. And a couple of points I wanted to make. The petitioner in his brief distinguished the main case the Board relied on in part for not extending EXIM. The Phillips case was another case where an employee whose career at one agency goes to another agency and isn't told that she will have to serve a probationary period. She was a career employee, so the petitioner who was a career employee at the Army can't distinguish his case from that one. And that was really the primary basis, I think, of the Board's decision in part that it could not extend the EXIM rule to another agency. They also mentioned a number of considerations that support that conclusion which also, I think, go a little bit to the situation of the employee and why he should be on notice that he should be checking if he's interested in knowing whether he's retaining his appeal rights. And as here where he was told it was a temporary position, a temporary position is not a permanent position. And that should have put him on notice to try to find out more. And the OPM regulations that provide for this kind of provisional temporary appointment, which is provisional until it can be permanently appointed, contemplate that even that kind of appointment, temporary appointment, will have an expiration date. But your position would be the same, I take it, even if he had been told that his position at DVA was permanent? You would say Clark Steele bars the Board from addressing this. So it may be that the facts of this case are a little more comfortable, but it wouldn't apply as a different rule. The Board wouldn't have jurisdiction even if he asked and he was misled. Is there no statute or regulation that deals with the kind of information that employees must be given in the hiring process? I find that to be a lot. I'm not aware of any, Your Honor. There's no statute that says you've got to give people accurate information? None has been introduced into this record, but I'm not aware of it. Very well. Why don't we hear from your fellow government counsel, Mr. Palmer. May it please the Court. This Court should affirm the Board's decision because Mr. Carroll was serving in a temporary position limited to at most 13 months when he was separated and therefore was not an employee pursuant to 5 U.C. 7511 and the Board lacked jurisdiction for improper termination. Mr. Carroll's argument to the contrary, that the Board did possess jurisdiction, is relying upon the involuntary retirement document, the constructive adverse action document, which does not apply in this case because here the VA did not even have an ability to take any actual adverse action against Mr. Carroll during the hiring process. It could not, for example, have fired Mr. Carroll before hiring him. It could not also have suspended him from working 14 years. Let me ask the same question of you. There's no statute or regulation that governs the hiring process that says you have to give accurate information to people who are being hired? I'm not aware of any, Judge Dike. And I think the question here is whether the agency, the fact that the agency did not inform Mr. Carroll of the limited duration of his temporary employment, the question is not whether that is wrong. The question is whether that confers jurisdiction on the Board. There simply is no support in the regulation statute, of which I'm aware, or any Federal Circuit case law that suggests, in fact, misrepresentations or any representation during the hiring process can somehow confer jurisdiction on the Board. The involuntary retirement doctrine, in that doctrine... So the agency can say anything it wants, as long as it's not, I guess, misleading? I think the agency can even say misleading things according to this Court's decision in Anderson. They can say misleading things? I think this Court's decision clarified that. The question isn't what the agency did was wrong. The question is, did the agency do something that conferred jurisdiction on the Board? Yeah, I think when you say the agency can do these, can do this, can do this, what you mean, is it not, is that even if that's actionable, or whether it's actionable somewhere, it's not actionable given the limited jurisdiction of the Board, right? That's correct. I mean, there certainly are some things the agency could do to an applicant, such as to tell him that, I'm sorry, you're Hispanic, we don't have Hispanics here at this agency that would be actionable somewhere else, but it wouldn't be actionable before the Board. I believe that's correct, yes. I should point out that the facts of this case do not suggest that the agency misled Mr. Carroll. And why do you agree with the Exum line of cases? Why can there be jurisdiction if it's within the same agency and they make a misrepresentation, but not be jurisdiction when it's cross-agencies? We do not agree with the Exum line of cases. In fact, we have argued in our briefs that that Exum decision, if necessary, should be overruled. We do think that the Exum decision is incorrect because there is no burden, either in statute or regulation, that states that an agency must inform an employee of certain things before the agency retains the employee. There simply is no burden. That was an MSPB-fashioned doctrine, and it conflicts with the notion that the MSPB's jurisdiction is strictly limited by statute, rule, or regulation. I should point out... What about the argument that Mr. Morrow makes, that this really is an issue of remedy when you've got the offending agency before you, you have somebody who was removed, albeit from a different job, but isn't it within the scope of the Board's rather comprehensive remedial authority under statute to devise a remedy that goes beyond simply putting the person back in the previous job? I think that's what happened in Exum. The Board put the employee into the new job. But I think that doesn't make any sense, and I think that is sort of a sign of the flawed doctrine to begin with. There simply was never any jurisdiction to begin with. Mr. Caro's argument presumes that, in this case, the VA could have somehow undertaken a constructive adverse action against Mr. Caro before it even had hired him. But of course that's not the case because it could not have even taken an adverse, an actual adverse action against him. And then you get to the situation four months down the road when he's separated as to, well, what would the remedy be if jurisdiction did exist? Well, but in the Exum setting, it's much closer to a situation where it's the same agency. The agency is... Let's just invent a case. The agency says, we're going to give you a... I'll take my case. A GS6 position. You had previously been in a GS4. And you take the job, and sure enough, as soon as you've left job one, they say, whoops, fooled you. You're out of a job.  It's GS2. And it goes before the Board. Clearly, he's got a right to go before the Board. He has been... He's left his job under false pretenses, and he's, in effect, been involuntarily terminated, as the doctrine would suggest it. And the Board says, you were involuntarily terminated by this particular agency. But you know what? Under the circumstances, we think the only way to really make you whole is to go ahead and put you in the position that they had promised you, as opposed to the position that they ended up sticking you in. I think, again, the flaw in the Exum line of reasoning is the fact that the Board found jurisdiction to begin with. Well, but there would be jurisdiction, right, in my hypothetical, given that the fellow's coming in and he's saying, I have lost my GS4 job. You know, I really wanted the GS6 job, but I'm out of a job altogether. Give me something. And the Board says, you know what? You are entitled to the GS4 job, but you know what? Given the way the agency has behaved, we think you ought to do better than that. You ought to have the GS6 that they promised you. Isn't that a question of remedy as opposed to jurisdiction? In that situation, Your Honor, I would concede that there the Board might have jurisdiction because it is much closer to an actual adverse action. It's much closer to a forcible removal. Well, if you agree that the Board has jurisdiction in that setting, then I think you're swallowing at least some considerable chunk of the Exum cases. Well, I disagree, Your Honor, with your characterization of the facts in Exum. Well, I'm not talking about Exum itself. Exum itself is a sort of odd case, but I'm talking about the general run of these cases in which, within the same agency, one moves Job 1 and goes to Job 2, and the Board says if the circumstances are appropriate, they can put you in Job 2. If it can be established in that circumstance that the reason the agency moved the employee to the new position was to strip the employee of Chapter 75 rights and to fire him specifically, I think that is much closer to a forcible removal and can in that instance be considered to be constructive adverse action. If I could just point out... But what you're suggesting is that Exum rests on the notion that there's an obligation to tell him things about the consequences of his leaving where there's no duty to do that. That's correct. And you wouldn't quarrel with the Exum result, would you, if there'd been a misrepresentation to the employee at the time that he left? I would still quarrel with that result, Your Honor, because, again, there's no statutory or regulatory duty for the agency not to mislead the employee. What the question... It has to be established... But does Covington in those cases say that a removal is involuntary if there's misleading? If they get him to leave Job 1 and go to Job 2 through a misrepresentation, that's an involuntary removal. I think the case in that situation is much closer to approaching involuntary removal, yes, Your Honor. However, Anderson does stand for the proposition that in the hiring process, even misleading representations by an agency cannot confer jurisdiction upon a mover. Again, it's this distinction between what the agency should have done, was it wrong, and then if it was wrong, doesn't confer jurisdiction. If I could just clarify for the Court one thing before I sit down. At joint appendix page 100, the initial Board decision in this matter, the Board wrote that, in fact, Mr. Carroll had not completed his boarding process. On page 12 of the decision, J100, the MSPB judge wrote, Finally, I note that Mr. James testified that the agency did forward the papers necessary to complete the appellant's boarding process. He stated at the hearing that he thought the reviewing panel had completed the appellant's paperwork, but that the agency had not completed processing it Thank you, Mr. Palmer. Mr. Eaton, you have, I think, three minutes. Yes, thank you. Just a couple of points, Your Honor. On the estoppel question, the Anderson line of cases, I want to be very clear about what we are arguing and what we are not. We are not saying that the agency's misconduct or misleading statements, however you want to characterize it, vested the Board with jurisdiction. That's not our argument. If that were the argument, I agree we would lose under Anderson. The argument is that, in fact, because he never surrendered the rights voluntarily, he never lost them. That has to be true, I think, because he has a constitutionally protected property right in those rights. Where did that right go? If he didn't give it up voluntarily, then he lost it involuntarily. If he lost those rights involuntarily, he had to receive some kind of process. Otherwise, you are essentially sanctioning the deprivation of his rights without process, and that can't happen. Such an act is void as a matter of law. So that's not an estoppel principle, Your Honor. When you say he lost his rights, you are referring... When I left the Department of Justice, for example, I lost a whole bunch of rights. Sure. Nobody told me about any of them, but I didn't have any right to be told that. Your argument is it depends entirely on the failure of the DVA to tell him that one of those rights would not continue on into his tenure with DVA. That's essentially right. It depends on the conclusion that because DVA didn't give him the material term of his employment, the only term that resulted in the loss of his rights... Does the agency have an obligation to investigate the scope of all the rights he holds at a different agency prior to making an offer to someone? No, we're not arguing for a full Exum rule. I have no opinion about whether the full Exum rule is correct. All we're saying is that in these circumstances, where the information in question is completely within the control of the agency, Mr. Carroll has no reason to have that information. The agency has exclusive possession of it, and... Is there evidence here that DVA was in fact aware that he was a permanent employee? Yes, yes. In fact, I believe it's undisputed, Your Honor. They were in constant communication with him and with his employing officer. They had his SF50 from the Army. They knew, and in fact, Mr. James testified that he knew Mr. James was coming from a... or excuse me, that Mr. Carroll was coming from a competitive service permanent appointment. So I don't think there's any question about that. But what if they hadn't known? What if they hadn't known? I don't think it would matter in this circumstance for the following reason. A temporary appointment that's limited to 2 years or less can never carry Title V rights, ever, as a matter of statute. So they didn't need to know anything about Mr. Carroll to know that, in fact, that was a really important term of his employment. No, but there's no obligation to tell people about things if they don't already have them. If the agency was unaware that he had those title rights prior, why would they say, well, this is a temporary position, and just so you know, that means these certain rights don't attach. I mean, that's... No, I'm not arguing that they have to tell him the rights attach. I think they just have to tell him about the limitations so that he can make that determination for himself. That is a reasonable rule of sort of informational disparity. They give him the information that they have exclusive possession of. He can use the information that he has exclusive possession of to make an informed decision, which under Covington and Sharpe and those line of cases is, in fact, the relevant question on the bottom. Just to be clear, the information is just the duration of the temporary. That's all, because that is the only thing in all of the many terms of his employment that had any effect at all on the loss of his Title V rights. So they didn't have to tell him that he would be leaving behind Title V rights. No, I don't believe they did. Exum says that in the same agency context they would. Again, I have no argument about that. I think, at a minimum, in these circumstances, they had an obligation to tell him in the material terms of his employment that they knew that did not depend on anything about Mr. Carroll. I think that's all that I have here. Thank you, Mr. Eaton. Mr. Eaton, I'm surmised that you and your firm have continued to represent Mr. Carroll on a pro bono basis. Am I correct? Yes, Your Honor. Well, the Court appreciates your capable and energetic service on behalf of your clients. It's a credit to the Bar, and we thank you. Thank you. The case is submitted.